**FIREARMS TRAINING SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–476C.

United States Court of Federal Claims.

Sept. 4, 1998.

744

Thomas J. Madden, Washington, DC, for plaintiff. John J. Pavlick, Jr., John F. Cooney, Jerome S. Gabig, Jr., and Johana A. Reed, of counsel.

John J. Hoffman, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk Manhardt, Assistant Director, Washington, DC, for defendant. Andrea Bretherton, Naval Air Warfare Center, of counsel.

James J. McCullough, Washington, DC, for ECC International Corporation as amicus curiae. Joel R. Feidelman, James S. Kennell, and Catherine E. Pollack, of counsel.

## OPINION

ANDEWELT, Judge.

### I.

In this pre-award government contract action brought pursuant to 28 U.S.C. § 1491(b), plaintiff, Firearms Training Systems, Inc., seeks declaratory and injunctive relief setting aside the contracting officer's determination not to consider further plaintiff's proposal submitted in response to Solicitation No. N61339–97–R–0044 issued by the Naval Air Warfare Center Training Systems Division of the Department of the Navy (the Navy). This action is before the court on the parties' cross-motions for summary judgment. This decision addresses one of the issues raised in

the cross-motions—whether prior to rejecting plaintiff's proposal the Navy was obligated under FAR 15.306(d)(3) to enter discussions with plaintiff so as to inform plaintiff of the weaknesses the Navy perceived in plaintiff's proposal and to give plaintiff an opportunity to respond to the Navy's concerns. For the reasons set forth below, the court concludes that the Navy was not so obligated.

### II.

The material facts are not in dispute. The instant solicitation covers an "Engagement Skills Trainer," which is a computer-operated simulator used in training armed forces personnel, both individually and collectively, in the use of various weapons. Plaintiff, along with ECC International Corp. (ECC), amicus in this action, and five other firms submitted proposals in response to the solicitation. The Navy eliminated one of these offerors from consideration, Systems Integration International (SII), because the Navy had determined that SII's proposal was not responsive to the terms of the solicitation and did not provide sufficient information for the Navy to perform a meaningful evaluation of its technical merit. The Navy invited the other six offerors, including plaintiff and ECC, to conduct a demonstration of their proposed systems as provided for in the solicitation.

After the demonstration, the Navy informed plaintiff and four of the five other offerors that they were no longer being considered for contract award. In a May 11, 1998, letter, the Navy informed plaintiff that "[its] proposal received an overall rating of 'unacceptable' because [it] did not satisfy the Government's requirements in the areas of System Operations and System Performance." The letter further informed plaintiff that "[its] proposal ... cannot be included in the competitive range for the procurement" and that "[i]n accordance with FAR Subpart 15.6, discussions will not be held with your firm and revisions to your proposal will not be accepted." The Navy offered to debrief plaintiff as to the Navy's findings and plaintiff accepted. At the debriefing, the Navy identified nine weakness-

es in plaintiff's proposal. The Navy's rejection of plaintiff's proposal and the proposals of four other remaining offerors resulted in the Navy establishing a competitive range of only one offeror, ECC. The Navy then determined to commence discussions with ECC.

## III.

An analysis of the parties' respective arguments concerning the Navy's alleged obligation to discuss with plaintiff the weaknesses the Navy found in plaintiff's proposal requires an understanding of the operation of the recently adopted FAR 15.306, which governs "Exchanges with offerors after receipt of proposals." FAR 15.306(a), (b), and (d), respectively, authorize three different types of exchanges between the government and offerors prior to contract award. Pursuant to FAR 15.306(a), when an award is to be made without discussions between the parties, the government may conduct limited exchanges, or "clarifications," with the offerors. FAR 15.306(a) provides:

(2) If award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals (*e.g.*, the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor clerical errors.

(3) Award may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions. If the solicitation contains such a notice and the Government determines it is necessary to conduct discussions, the rationale for doing so shall be documented in the contract file....

FAR 15.306(b), entitled "Communications with offerors before establishment of the competitive range," addresses communications aimed at determining whether an offeror should be included in the competitive range. Such communications may be conducted "to enhance the Government's understanding of the proposals ... or [to] facilitate the Government's evaluation process ... for the purpose of establishing the competitive range." FAR 15.306(b)(2). These communications may be conducted with offerors "whose past performance information is the determining factor preventing them from being placed within the competitive range." (FAR 15.306(b)(1)(i)) or with offerors "whose exclusion from, or inclusion in, the competitive range is uncertain" (FAR 15.306(b)(1)(ii)). FAR 15.306(b)(3) stresses that these communications "shall not provide an opportunity for the offeror to revise its proposal" and lists the topics that may be addressed in these communications, such as ambiguities as to perceived weaknesses.

FAR 15.306(c) discusses the "Competitive range" determination itself and FAR 15.306(d) sets forth the rules for "Exchanges with offerors after establishment of the competitive range." FAR 15.306(c) provides:

*Competitive range.* (1) Agencies shall evaluate all proposals in accordance with 15.305(a), and, *if discussions are to be conducted, establish the competitive range.* Based on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals, unless the range is further reduced for purposes of efficiency pursuant to paragraph (c)(2) of this section.

\*    \*    \*    \*    \*    \*

(3) If the contracting officer, after complying with paragraph (d)(3) of this section, decides that an offeror's proposal should no longer be included in the competitive range, the proposal shall be eliminated from consideration for award. Written notice of this decision shall be provided to unsuccessful offerors in accordance with 15.503.

(Emphasis added.) The preamble to FAR 15.306(d) defines "discussions" as negotiations between the government and offerors that occur after the establishment of the competitive range in a competitive acquisition and that are "undertaken with the intent of allowing the offeror to revise its propos-

al." [1]  With respect to the purpose, content, and effect of such discussions, FAR 15.306(d) goes on to provide:

(1) Discussions are tailored to each offeror's proposal, and shall be conducted by the contracting officer with each offeror within the competitive range.

(2) The primary objective of discussions is to maximize the Government's ability to obtain best value, based on the requirement and the evaluation factors set forth in the solicitation.

(3) The contracting officer shall, subject to paragraphs (d)(4) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, significant weaknesses, deficiencies, and other aspects of its proposal (such as cost, price, technical approach, past performance, and terms and conditions) that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. The scope and extent of discussions are a matter of contracting officer judgment. . . .

(4) If, after discussions have begun, an offeror originally in the competitive range is no longer considered to be among the most highly rated offerors being considered for award, that offeror may be eliminated from the competitive range whether or not all material aspects of the proposal have been discussed, or whether or not the offeror has been afforded an opportunity to submit a proposal revision (see 15.307(a) and 15.503(a)(1)).

Hence, FAR 15.306 provides the contracting officer with a series of options for securing additional information from offerors prior to contract award and contemplates that the government will establish a competitive range in those instances where it intends to engage in "discussions" with an offeror during which the offeror will be afforded an opportunity to revise its proposal.

**IV.**

Herein, the Administrative Record unambiguously demonstrates that prior to eliminating plaintiff's proposal from further consideration, the contracting officer did not intend to allow offerors to revise their proposals, to enter "discussions" under FAR 15.306(d), or to make a competitive range determination. Consistent with FAR 15.306(a), the solicitation informed offerors that "[t]he government intends to evaluate offers and award a contract without discussions with offerors," and, after receiving the proposals, the Navy sought from each offeror to which it extended an offer to conduct a system demonstration answers to a list of "clarification" questions which was prefaced with the admonition that "[a] revision to your proposal is not requested at this time." Indeed, when plaintiff characterized its exchanges with the Navy in this regard as "discussions," a Navy representative was quick to clarify the contracting officer's contrary intent by stating: "You are hereby advised NO discussions have taken place." As to a competitive range determination, a Navy memorandum to the file memorializing the Navy's decision to invite six of the seven offerors to conduct a system demonstration stated that "no competitive range cuts were made." Consistent with this position, the Navy did not at that time document in the file any rationale for abandoning its prior intent to evaluate the proposals without discussions, as would be required under FAR 15.306(a)(3). In addition, when the Navy informed plaintiff after the demonstration that it was eliminating plaintiff's proposal from further consideration, the Navy did not suggest that plaintiff's proposal was being eliminated from a competitive range previously determined but rather that plaintiff's proposal "cannot

---

1. The preamble to FAR 15.306(d) provides:
   Negotiations are exchanges, in either a competitive or sole source environment, between the Government and offerors, that are undertaken with the intent of allowing the offeror to revise its proposal. These negotiations may include bargaining. Bargaining includes persuasion, alteration of assumptions and posi- tions, give-and-take, and may apply to price, schedule, technical requirements, type of contract, or other terms of a proposed contract. When negotiations are conducted in a competitive acquisition, they take place after establishment of the competitive range and are called discussions.

be included in the competitive range for the procurement."

Plaintiff contends that regardless of whether the Navy intended to make a competitive range determination when it invited six of the seven offerors to conduct a system demonstration, the Navy created such a competitive range at that time under the terms of the solicitation. Plaintiff relies upon an internal Navy planning document that anticipated that the offerors would not demonstrate their systems until after a competitive range determination was made, and a consistent statement in the solicitation that "offeror[s] who submit a responsive proposal that is within the competitive range shall be invited to provide a system demonstration." Based on these authorities, plaintiff argues that the Navy must be deemed to have made a competitive range determination before the system demonstrations took place, and that having made such a determination, the Navy was obligated under FAR 15.306(d)(3) to enter discussions with plaintiff concerning any perceived weaknesses in plaintiff's proposal.

There are at least two fatal flaws in plaintiff's argument. First, the solicitation, read as a whole, is at least arguably ambiguous as to whether the Navy, at the time of the solicitation, anticipated making a competitive range determination prior to demonstration. The statement that "offeror[s] who submit a responsive proposal that is within the competitive range shall be invited to provide a system demonstration" does not constitute a guarantee that all offerors who are invited to provide system demonstrations have submitted proposals that are within the competitive range. In other words, this statement does not obligate the contracting officer to make a competitive range determination prior to any system demonstration and does not preclude the contracting officer from inviting offerors to demonstrate their proposed systems that are either nonresponsive or not within the competitive range. Moreover, plaintiff's interpretation of this statement would be in-

consistent with the solicitation statement that "[t]he government intends to evaluate offers and award a contract without discussions with offerors." The clear implication of the solicitation read as a whole is that the demonstration phase was an important part of the proposal evaluation process and that the Navy would conduct such demonstrations before making any award decisions. According to the Navy's Source Selection Plan, "[a] system demonstration will be conducted to assess the technical merit and maturity of the offeror's integrated system and a risk rating will be assigned." Hence, the system demonstration seems to be an integral part of the evaluation process. Under plaintiff's interpretation, however, the Navy could not conduct this important phase of the evaluation process without first forming a competitive range and thereby abandoning its previous intention to make an award without discussions with offerors.

Second, even assuming the solicitation's reference to the competitive range in relation to system demonstrations expresses the Navy's original intent to make a competitive range determination before the system demonstrations took place, nothing in the solicitation or the FAR would preclude the contracting officer, after performing an initial evaluation of the proposals, from postponing the competitive range determination.[2] To the contrary, the FAR would seem strongly to support the contracting officer possessing such authority. As described above, FAR 15.306 establishes a comprehensive scheme governing pre-award communications between the agency and offerors and the agency's establishment of a competitive range. That scheme grants the agency broad discretion to react to the specific facts before it and to choose the particular type or types of communication with the offerors that will result in the most efficient and productive contract award. In this regard, FAR 15.306(a) anticipates that where, as here, the solicitation reflects an intent to make an

---

2. Indeed, in accordance with FAR 15.306(a)(3), a Navy memorandum to the file provides insight as to why no competitive range determination was made prior to the demonstration phase, as follows: "Although each of the ... proposals contain some weak areas, ... it was determined that

the weak areas did not justify a competitive range cut.... The demonstration would either confirm the weak areas or give the offerors an opportunity to show the Government the benefits of each of their systems."

award without discussions, the contracting officer will make a competitive range determination only if the contracting officer later determines that commencing such discussions and allowing proposal revisions would be efficient. Similarly, FAR 15.306(c), which provides that "[b]ased on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range . . . ," anticipates that the contracting officer will not make a competitive range determination until the agency is in a position, at least generally, to evaluate each proposal against all evaluation criteria, including criteria related to technical merit. Herein, after an initial evaluation of the competing proposals, the Navy determined not to make a competitive range determination at least until after it conducted a system demonstration that would provide additional information concerning the weaknesses and benefits associated with each proposal. Such a decision to delay any competitive range determination until the Navy is in a better position to evaluate the technical merit of the proposals would appear fully consistent with the discretion FAR 15.306 gives the agency in responding to the circumstances with which it is faced in a particular procurement.

In sum, nothing in the solicitation specifically precludes the Navy during the procurement process from postponing any competitive range determination. Moreover, the FAR anticipates that the agency generally will have broad discretion to evaluate the particular facts before it and to determine what type of communication with the offerors is appropriate and when to make any competitive range determination. Given this setting, the court concludes that the Navy acted within its discretion when, in rejecting plaintiff's proposal, it determined that the Navy had not made a competitive range determination and was not obligated to engage in discussions with plaintiff concerning any weaknesses in its proposal. Summary judgment is warranted where there is no dispute as to any material issue of fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because there are no material facts in dispute here, defendant's

motion for summary judgment on this issue is granted.

### Conclusion

For the reasons set forth above, the court concludes that the Navy was not obligated to enter into discussions with plaintiff regarding perceived weaknesses in plaintiff's proposal. Accordingly, defendant's motion for summary judgment on this issue is granted. The court will address the remaining issues raised in the parties' cross-motions in accordance with the procedures discussed at the close of oral argument on August 19, 1998.

IT IS SO ORDERED.